In re Willie F. SINGLETARY, Judge,
Philadelphia Traffic Court,
Philadelphia County.

No. 1 JD 08.

Court of Judicial Discipline
of Pennsylvania.

Dec. 1, 2008.
Order Jan. 23, 2009.

Joseph A. Massa, Jr., Chief Counsel, Judicial Conduct Bd., for the Judicial Conduct Bd.

John S. Summers, Esq., Philadelphia, for respondent.

Before MUSMANNO, P.J., and JUDGE, KURTZ, JAMES, SHABEL, CURRAN and ROBINSON, JJ.

OPINION BY Judge MUSMANNO.

## I. INTRODUCTION

The Judicial Conduct Board (Board) filed a Complaint with this Court on April 22, 2008 against Judge Willie F. Singletary (Respondent) consisting of five counts which charge Respondent with:

1. violation of Article V, § 18(d)(1) of the Pennsylvania Constitution by engaging in conduct which brings the judicial office into disrepute (Count 1),

2. violation of Rule 15B.(2) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides magisterial district judges or candidates for such office shall not engage in partisan political activity, deliver political speeches, make or solicit political contributions (including purchasing tickets for political party dinners or other functions) or attend political or party conventions or gatherings, except as authorized in subdivision C of Rule 15 [1] (Count 2).

3. violation of Rule 15D.(1) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that with respect to their campaign conduct, magisterial district judges or candidates for judicial office shall maintain the dignity appropriate to judicial office (Count 3),

4. violation of Rule 15D.(3) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that with respect to their campaign conduct, candidates for judicial office shall not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit or appear to commit the candidate with respect to cases, controversies, or that are likely to come before the court (Count 4), and

5. violation of Rule 15D.(4) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides a magisterial district judge or candidate for such office shall not themselves solicit or accept campaign funds, or solicit publicly stated support, but they may establish committees of responsible persons to secure and manage the expenditure of funds for their campaign and to obtain public statements of support for their candidacy (Count 5).

The Board and the Respondent have submitted Stipulations of Fact in Lieu of Trial under C.J.D.R.P. No. 502(D)(1) and a waiver of trial. The Court hereby accepts those stipulations in pertinent part, recited below, as the facts necessary for the disposition of this case.

## II. *FINDINGS OF FACT*

1. Pursuant to Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania, the Board is granted authority to determine whether there is probable cause to file formal charges, and when it concludes that probable cause exists, to file formal charges against a justice, judge or, magisterial district judge, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2. Pursuant to Rule 18 of the Rules Governing Standards of Conduct of Magisterial District Judges, the Rules also apply to, and "magisterial district judge" as used therein additionally includes, the judges of the Philadelphia Traffic Court,

3. Since on or about January 7, 2008, the Respondent has served continuously to the present as judge for the Philadelphia Traffic Court, Philadelphia, Pennsylvania, with an office located at 800 Spring Gar-

---

1. Rule 15C. provides:

Magisterial district judges or candidates for such office may, in the year they run for office, attend political or party conventions or gatherings, speak to such gatherings or conventions on their own behalf, identify themselves as members of a political party, and contribute to their own campaign, a political party or political organization (including purchasing tickets for political party dinners or other functions).

den Street, Room 207, Philadelphia, Pennsylvania 19123–2690.

4. The Philadelphia Traffic Court is a summary court of limited jurisdiction with seven (7) elected judges, trained by the Commonwealth specifically to preside over and adjudicate citations for moving violations issued within the City and County of Philadelphia, as provided in Title 75 of the Pennsylvania Motor Vehicle Code. Additionally, the Traffic Court is responsible for the collection of fines resulting from the issuance of citations by the Philadelphia Police Department and other law enforcement agencies. In this regard, the Traffic Court judges provide for installment payments when a defendant who is sentenced to pay a fine and costs is without the financial means immediately to pay the fines and costs,

5. On Sunday, April 22, 2007, while campaigning during the Primary Election for the position of judge of the Philadelphia Traffic Court, the Respondent appeared before a gathering of the Philadelphia First State Road Rattlers, a motorcycle club, and/or others, at the Malcolm X Park located at 52nd and Pine Streets in the City of Philadelphia.

6. The purposes of the gathering were: (1) the "blessing of the bikes" at the beginning of the summer; (2) to raise funds for the Respondent's campaign for the Philadelphia Traffic Court bench; and (3) to encourage people to support him at the polls,

7. On or about April 22, 2007, the Respondent personally solicited funds from members of the Philadelphia First State Road Rattlers and others and his spontaneous words and actions conveyed an impression that he would be partial to his supporters.

8. The Respondent called into a circle a group of people wearing the colors of the motorcycle club.

9. The Respondent offered a blessing for the riders and their bikes and then queried:

*"You're all going to help me out?"*

10. The Respondent continued:

*"There's going to be a basket going around because I'm running for Traffic Court Judge, right, and I need some money. I got some stuff that I got to do, but if you all can give me twenty ($20) dollars you're going to need me in Traffic Court, am I right about that?"*

11. The Respondent further stated:

*"Now you all want me to get there, you're all going to need my hook-up, right?"*

12. The Respondent closed by stating:

*"It costs money. I have to raise $15,000 by Friday, I just hope you have it, because I have to raise $15,000 dollars by Friday."*

13. A total of $285 was collected and duly reported on the Respondent's Campaign Financial Report.

14. The Respondent did not attend judicial school until after he had been elected.

### III. DISCUSSION

 We find that Respondent's conduct on Sunday, April 22, 2007 while campaigning in the primary election for Judge of the Philadelphia Traffic Court at a gathering of a motorcycle club known as the "Philadelphia First State Road Rattlers" in Malcolm X Park at 52nd & Pine Streets, Philadelphia, constituted:

1. a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution as conduct which brings the judicial office into disrepute (Count 1);

2. a violation of Rule 15D.(1) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that with respect to their campaign conduct, magisterial district judges or candidates for judicial office shall maintain the dignity appropriate to judicial office (Count 3);

3. a violation of Rule 15D.(3) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that, with respect to their campaign conduct, magisterial district judges or candidates for such office shall; (3) not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit[2] the candidate with respect to cases, controversies, or issues that are likely to come before the court; or misrepresent their identity, qualifications, present position, or other fact (Count 4); and

4. violation of Rule 15D.(4) of the Rules Governing Standards of Conduct of Magisterial District Judges which provides that, with respect to their campaign conduct, magisterial district judges or candidates for such office, shall not themselves solicit or accept campaign funds, or solicit publicly stated support, but they may establish committees of responsible persons to secure and manage the expenditure of funds for their campaign and to obtain public statements of support for their candidacy (Count 5).

We find that the Board has established each of the violations listed above by clear and convincing evidence.

The Board filed a Motion to Withdraw Count 2 which charges that Respondent's conduct constitutes a violation of Rule 15B.(2) of the Rules Governing Standards of Conduct of Magisterial District Judges. The Motion was filed under C.J.D.R.P, No. 502(F) for the reason that, in the Board's judgment, the conduct proscribed in Rule 15D.(4) (which is the subject of Count 5) more specifically addresses the conduct of Respondent set out in the Complaint and makes the inclusion of Count 2, which charges a violation of Rule 15B.(2), unnecessary. The Board avers that the disposition of this case will be expedited if the Court's focus is on the violation of Rule 15D.(4) as charged in Count 5. We agreed that this constitutes the "good cause" required by C.J.D.R.P. No. 502(F) and granted the Motion.

Count 4. Violation of Rule 15D.(3).

We believe any discussion of this case should begin with the charges contained in Count 4. Count 4 charges a violation of Rule 15D.(3) of the Rules Governing Standards of Conduct of Magisterial District Judges. That Rule provides:

---

**2.** The Complaint contained the additional words "or appear to commit" which words were contained in the Rule when the Respondent's offending conduct took place as well as when the Complaint was filed. On July 22, 2008 the Supreme Court of Pennsylvania amended the Rule by deleting those words which it deemed to be an unconstitutional impairment of the right to free speech based on the decision of the Supreme Court of the United States in the case of *Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002), 207 Pa.Code Ch. 51, Magisterial Doc. No. 1; No. 246, 38 Pa.B. 4353. The Supreme Court had previously (on March 17, 2008) amended Canon 7B.(*l*)(c) of the Code of Judicial Conduct in a similar fashion, i.e., by deleting the words "or appear to commit" from the Canon. 20 Pa. Code Ch. 33, No. 317 Judicial Administration Doc, No. 1, 38 Pa.B. 1445. In this Opinion we will consider whether Respondent's conduct constitutes a violation of Rule 15D.(3) as amended.

D. With respect to their campaign conduct, magisterial district judges or candidates for such office shall:

(3) not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or misrepresent their identity, qualifications, present position, or other fact.

It is stipulated that, in the course of soliciting money from the assembled motorcycle club members, Respondent said;

*"You're going to need me in traffic court, am I right about that?"*

By these words, Respondent is telling the crowd that the reason they should give him money to help him get elected as a judge of Traffic Court, was because they were going to "need" him in that position. Indeed, he went on to say:

*"Now you all want me to get there, you're all going to want my hook-up, right?"*

No one, hearing this, could fail to understand that Respondent was promising that anyone who gave him money would get favorable consideration from him if he was elected judge. This conduct is the pure antithesis of the concept of "judge."

We think it is beyond argument that when Respondent made the statements quoted above, he was violating the mandate of Rule 15D.(3) that he "shall not make pledges or promises to conduct in office other than the faithful and impartial performance of the duties of the office."

As we said, "No one *hearing* this [Respondent's statements quoted above] could fail to understand that Respondent was promising that anyone who gave him money would get favorable consideration from him if he was elected judge"; so, we say that no one *stating* this could fail to understand the same. And, so, we find that this was Respondent's understanding; that it was his intention to convey that message; and that his conduct was an insult to the inherent and essential attribute of judicial office, and a violation of Rule 15D.(3).

Count 1. Conduct which brings the judicial office into disrepute, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution.

In many cases this Court has been called upon to determine whether particular conduct is such that brings the judicial office into disrepute. Beginning with *in re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc. 1997) we have consistently held that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312. *See, also, e.g., In re Hamilton,* 932 A.2d 1030, 1033 (Pa.Ct.Jud.Disc.2007).

Likewise, this Court has repeatedly held that the test to be applied in making that evaluation requires a determination of whether the conduct is so extreme as to have brought the judicial office itself into disrepute.[3] And, in making this determination we have consistently followed our holding in *In re Smith,* 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996), where we said:

---

**3.** *In re Hamilton,* 932 A.2d 1030, 1034 (Pa.Ct. Jud.Disc.2007); *In re Berkhimer,* 877 A.2d 579, 593 (Pa.Ct.Jud.Disc.2005); *In re Harrington,* 877 A.2d 570, 576 (Pa.Ct.Jud.Disc.2005); *In re Joyce,* 712 A.2d 834, 844 (Pa.Ct.Jud. Disc.1998); *In re Trkula,* 699 A.2d 3, 7 (Pa.Ct. Jud.Disc.1997); *In re Cicchetti,* 697 A.2d 297, 312 (Pa.Ct.Jud.Disc.1997); *In re Smith,* 687 A.2d 1229, 1239 (Pa.Ct.Jud.Disc.1996).

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Id.* at 1239. *See, also, Hamilton, supra,* at 1034, *Berkhimer, supra,* at 593, *Harrington, supra,* at 576, *Joyce, supra,* at 844, *Trkula, supra,* at 7, *Cicchetti, supra,* at 312.

Testing Respondent's conduct in this case against this standard, our decision on the question comes easily; for, certainly, the reasonable expectations of the public would include the expectation that a candidate for judicial office would not offer the quid pro quo of favorable treatment in his court in exchange for a financial contribution to his campaign. As stated earlier, this is an insult to the inherent and essential attribute of judicial office.

We note, also, that Respondent's conduct did not take place in the still, dark air of a closet—it took place in the sunlight during a rally in a public park.

We hold that this conduct of Respondent was so extreme as to bring the judicial office into disrepute.

Count 3. Violation of Rule 15D.(1).

Rule 15D.(1) of the Rules Governing Standards of Conduct of Magisterial District Judges provides:

D. With respect to their campaign conduct, magisterial district judges or candidates for such office shall:

(1) maintain the dignity appropriate to judicial office, and shall encourage members of their family to adhere to the same standards of political conduct that apply to them.

On the question whether the conduct of Respondent described in the Findings of Fact and discussed above constitutes a violation of Rule 15D.(1) we refer to the definition of "dignity":

dignity n., 1.a. the presence of poise and self-respect in one's deportment to a degree that inspires respect.

*The American Heritage Dictionary of The English Language,* 1979 edition, p. 369. Certainly, Respondent's offer to place his office in the service of anyone who would put "twenty dollars ($20)" in "a basket [that's] going to be ... going around" does not bespeak of "poise" and "self-respect"; neither is it deportment "that inspires respect." On the contrary, it inspires *disrepute,* which is "the absence or loss of reputation."[4] We have so held. And so we hold that the Board has established that Respondent, with respect to this campaign conduct, did not maintain the dignity appropriate to the judicial office—a violation of Rule 15D.(1) of the Rules Governing Standards of Conduct of Magisterial District Judges.

Count 5. Violation of Rule 15D.(4).

Rule 15D.(4) of the Rules Governing Standards of Conduct of Magisterial District Justices provides:

D. With respect to their campaign conduct, magisterial district judges or candidates for such office shall:

(4) not themselves solicit or accept campaign funds, or solicit publicly stated support, but they may establish committees of responsible persons to secure and manage the expenditure of funds for their campaign and to obtain public statements of support for their candidacy.

The stipulated facts in this case establish that on April 22, 2007, a few weeks

---

**4.** *The American Heritage Dictionary, supra,* p. 381. And, see "Synonyms: disgrace, dishonor, shame, infamy, ignominy, odium, scandal, obloquy, opprobrium, disrepute, discredit, degradation." *Id.* at 377.

before the primary election, Respondent went to Malcolm X Park for the purpose of personally soliciting campaign funds, that he did personally solicit campaign funds, and that he did personally accept campaign funds—all in violation of Rule 15D.(4). And, so, we find that the Board has established a violation of that Rule.

## IV. *CONCLUSIONS OF LAW*

1. Respondent's conduct at the "Blessing of the Bikes" on April 22, 2007 at Malcolm X Park in West Philadelphia, during his primary campaign for the office of judge of the Philadelphia Traffic Court, constitutes:

 (a) conduct such that brings the judicial office into disrepute, a violation of Article V, § 18(d)(1) of the Pennsylvania Constitution;

 (b) a violation of Rule 15D.(1) of the Rules Governing Standards of Conduct of Magisterial District Judges;

 (c) a violation of Rule 15D.(3) of the Rules Governing Standards of Conduct of Magisterial District Judges;

 (d) a violation of Rule 15D.(4) of the Rules Governing Standards of Conduct of Magisterial District Judges.

2. Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

MORRIS, J., did not participate in the consideration or disposition of this case.

### ORDER

PER CURIAM.

AND NOW, this 1st day of December, 2008 based upon the Conclusions of Law, it is hereby ORDERED:

 That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law is hereby filed and shall be served on the Judicial Conduct Board and upon the Respondent,

 That, either party may file written objections to the Court's conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

 That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and, if so, issue an Order setting a date for such oral argument. If the court determines not to entertain oral argument upon the objections, the Findings of Fact and Conclusions of Law shall become final and this court will conduct a hearing on the issue of sanctions,

 That, in the event objections are not filed within the time set forth above, the Findings of Fact and Conclusions of Law shall become final, and this Court will conduct a hearing on the issue of sanctions.

### ORDER

PER CURIAM.

AND NOW, this 23rd day of January, 2009, after hearing held on January 6, 2009 on the question of sanctions and after consideration of the arguments of counsel on that question, the Court HEREBY IMPOSES a sanction of PUBLIC REPRIMAND upon the Respondent. The Court further ORDERS that Respondent shall be placed on probation for a period of two years commencing on the date of this Order.

Said probation shall be subject to the supervision of this Court and shall be subject to the condition that Respondent report monthly to the Chief Counsel of the Judicial Conduct Board or his designee, at

the times prescribed by the Judicial Conduct Board and the Judicial Conduct Board shall file a written report monthly with this Court advising that, to its knowledge, Respondent, has, or has not, been in compliance with the Rules Governing Standards of Conduct of Magisterial District Judges and provisions of Article V of the Pennsylvania Constitution pertaining to the conduct of magisterial district judges.

The Court's conclusion that public reprimand followed by a two year period of probation is the appropriate sanction in this case is based upon the following considerations:

1. The words of Respondent which gave rise to the charges filed in the Judicial Conduct Board's Complaint:

 a. were spoken in conjunction with a prayer led by Respondent asking God's protection for the members of the motorcycle club, a total of 15–18 in number, those members consisting largely of members of Respondent's family and friends;

 b. were spoken in a moment of high excitement when Respondent was in his "preacher mode" and the offending words were few, brief, and fleeting.

2. This Court is aware of no other offending conduct of any kind by Respondent during his campaign for traffic court judge.

3. At the time the words were spoken, Respondent was 26 years old; had never been a candidate for political office, nor had he ever been in anyway associated with politics or political campaigns, nor had he had any education respecting the laws of Pennsylvania or the ethical rules governing the political campaigns of candidates for judicial office.

4. At the time the words were spoken, Respondent was not a lawyer and had not had the opportunity to attend any classes required for magisterial district judges once they are elected.

5. Respondent did not know that the Rules Governing Standards of Conduct of Magisterial District Judges prohibited judicial candidates from personally soliciting campaign funds but, rather, require such solicitation to be done by a "committee"— whereas no such restriction is imposed on candidates for any other, i.e., non-judicial, office.

6. Respondent's evident contrition.

7. Respondent's cooperation with the Judicial Conduct Board at every stage of its investigation and prosecution of this case.

8. Respondent's ministry in his community as Pastor of The City of Refuge Church in West Philadelphia.

9. Respondent's service in the United States Navy after September 11, 2001, until 2003, and particularly his service on board the USS Theodore Roosevelt, CVN–71, in the Persian Gulf during Operation Enduring Freedom.

10. Respondent's exemplary record as a judge of the Philadelphia Traffic Court during the past year of 2008, the first year of his service as a judge of that court.

In *In re Toczydlowski,* 853 A.2d 20; 853 A.2d 24, 26 (Pa.Ct.Jud.Disc. 2004) in considering the appropriate sanction, we made reference to *In re Deming,* 108 Wash.2d 82, 736 P.2d 639 (1987), a case decided by the Supreme Court of Washington, where that court "established" principals or factors which it said should be considered in selecting the appropriate sanction.

We pointed out in *In re Toczydlowski, supra,* and we reiterate, that this Court is not bound by the decisions or opinions of courts of other states on judicial disciplinary matters, especially on the question of

sanctions. The Supreme Court of this Commonwealth is the sole authority on those issues;[1] we take our guidance from that Court as well as from prior opinions of this Court. That is not to say that, in a given case, this Court should not look to the opinion of a court of a brother state if well reasoned and congruous with the policy and principles to which this Court is committed.

Turning now to *In re Deming*, the Supreme Court of Washington said that, in determining the appropriate sanction, it would consider ten "nonexclusive" factors. These were;

"(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct." The misconduct giving rise to the charges in this case is the *only* instance of misconduct by this Respondent either as a candidate for judicial office or during his service as a judge of the Traffic Court of Philadelphia, either on or off the bench.

"(b) the nature, extent and frequency of occurrence of the acts of misconduct." This consideration is very much akin to (a), and we note only that, as to the nature and frequency of the conduct, we are impressed by the sharp contrast this case bears to *Deming*. In *Deming*, among other things, Deming was found to have "made a *myriad* of improper and offensive comments and sexual innuendos to women, either *in public or in his courtroom* in the presence of others" (emphasis added);

"(c) whether the conduct occurred in or out of the courtroom;

(d) whether the misconduct occurred in the judge's official capacity or in his private life;

(e) whether the judge has acknowledged or recognized that the acts occurred;

(f) whether the judge has evidenced an effort to change or modify his conduct:

(g) the length of service on the bench;

(h) whether there have been prior complaints about this judge;

(i) the effect the misconduct has upon the integrity of and respect for the judiciary; and

(j) the extent to which the judge exploited his position to satisfy his personal desires."

Consideration of all of these factors with the exception of (i) weigh strongly in favor of leniency for this Respondent. There is no question, as we have said, that Respondent's words at the "Blessing of the Bikes"—even though this was only one occasion—cannot fail to cause a lessening of the public's respect for the judiciary. Nevertheless, the cumulative effect of consideration of the *Deming* factors points not to imposition of a severe sanction, but, rather, in the opposite direction.

For all these reasons, we conclude that the imposition of the sanction of public reprimand followed by a period of probation is the appropriate sanction in this case.

---

1. *See,* Pa. Const., Article V, § 10(c) and *In re Melograne,* 571 Pa. 490, 498–99, 812 A.2d 1164, 1169 (2002) and *Office of Disciplinary Counsel v. Jepsen,* 567 Pa. 459, 467, 787 A.2d 420, 425 (2002).